UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| GREGORIO TREVINO, JR., <br>                 Plaintiff, <br><br> v. <br><br> HIDALGO COUNTY, TEXAS; <br> A.C. CUELLAR, in his official capacity as Commissioner of Precinct One, Hidalgo County, Tex., and in his personal Capacity; RAUL LOZANO; DAVID RODRIGUEZ; OSCAR GARCIA; OSCAR GONZALEZ; and ESTEBAN MATA, in their official and personal capacities, <br>                 Defendants. | Civil Case No. 15-CV-435 <br><br> DECLARATORY AND INJUNCTIVE RELIEF SOUGHT |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff GREGORIO TREVINO, JR. ("Plaintiff" or "Trevino") brings this action for injunctive and declaratory relief, as well as nominal and compensatory damages and punitive damages, and complains as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343. This civil action arises under the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983, 1985. Plaintiff seeks a declaration of his rights in this case of actual controversy within this court's jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

2. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this district.

## PARTIES

3. Plaintiff Trevino is a resident of Hidalgo County, Texas.

4. Defendant Hidalgo County, Texas is a governmental entity established under the laws of Texas and can be served by delivering citation to its county judge, Ramon Garcia, at 100 E. Cano St., Edinburg, TX 78539.

5. Defendant A.C. Cuellar is the Precinct One Commissioner and can be served by delivering citation to him at 1902 Joe Stephens Avenue, Ste. 101, Weslaco, Hidalgo County, Texas.

6. Raul Lozano, chief of staff to Defendant Cuellar during all relevant times, resides in Hidalgo County, Texas. Lozano plays a key role in implementing Cuellar's political retaliation by harassing targeted Precinct One employees and running them off the job. Lozano frequently gave orders to Precinct One employees under his supervision—including especially the other defendants here—to carry out harassment and illegal retaliation against Plaintiff and other Precinct One employees who failed to support Cuellar's political preferences.

7. David Rodriguez, a high level employee under Defendant Cuellar during all relevant times, resides in Hidalgo County, Texas. Rodriguez plays a key role in implementing Cuellar's political retaliation by harassing targeted Precinct One employees and running them off the job. Rodriguez frequently gave orders to Precinct One employees under his supervision—including especially the other defendants here—to carry out harassment and illegal retaliation against Plaintiff and other Precinct One employees who failed to support Cuellar's political preferences.

8. Oscar Garcia, a high level employee under Defendant Cuellar during all relevant times, resides in Hidalgo County, Texas. Oscar Garcia plays a key role in implementing Cuellar's

political retaliation by harassing targeted Precinct One employees and running them off the job. Oscar Garcia worked at the City of Weslaco but when Cuellar took office, Cuellar brought Oscar Garcia to Precinct One.

9. Oscar Gonzalez, a high level employee under Defendant Cuellar during all relevant times, resides in Hidalgo County, Texas. Oscar Gonzalez plays a key role in implementing Cuellar's political retaliation by harassing targeted Precinct One employees and running them off the job. Oscar Gonzalez in effect took over the role played by Oscar Garcia after Oscar Garcia left Precinct One.

10. Esteban Mata, a high level employee under Defendant Cuellar during all relevant times, resides in Hidalgo County, Texas. Mata plays a key role in implementing Cuellar's political retaliation by harassing targeted Precinct One employees and running them off the job.

## STATEMENT OF FACTS

11. Plaintiff is a long-time resident of Hidalgo County. He is married and has seven children. All of his children were ages twelve and under at the relevant times. Plaintiff had breast cancer. Defendants were aware of all these facts.

12. Trevino was employed under Precinct One from approximately 2003 to 2006, when he changed employment to Edcouch Elsa ISD.

13. Trevino publicly supported Joel Quintanilla for Precinct One Commissioner in a special election held in 2010. Defendant A.C. Cuellar ran as a write-in candidate against Quintanilla in that election. Quintanilla won and took office.

14. Trevino began working for Precinct One again on September 26, 2011 in the maintenance department.

15.     Precinct One Commissioner was on the general election ballot again in 2012 for a full term.  Joel Quintanilla ran as the incumbent against A.C. Cuellar.  Trevino again supported Quintanilla.  Defendant Cuellar won the election.

16.     Upon taking office, Defendant Cuellar began a systematic campaign of retaliation against many persons who had supported Quintanilla and/or whom were otherwise not willing to go along with the political preferences in other local elections of Defendant Cuellar.  Plaintiff Trevino was subjected to various forms of unconstitutional and retaliatory conduct that eventually culminated with his termination.

17.     After Defendant Cuellar took office, Jose Lupe Garcia, as well as Defendants and other agents of Defendants, told Trevino that Cuellar wanted Trevino to be on Cuellar's political team.

18.     Trevino was afraid for his job, which he needed to support his family with seven young children.  Trevino had distributed many large campaign signs for Quintanilla in 2010 and 2012.  Trevino still maintained these signs after Cuellar took office, and he showed the signs to Jose Lupe Garcia because Trevino was afraid for his job and he wanted A.C. Cuellar's team to think that Trevino could help with the Cuellar campaign.

19.     Lupe Garcia, among other Defendants and other agents of Defendants, on behalf of A.C. Cuellar, told Trevino that they were going to take care of him and other Precinct One employees, that is that Trevino and the other employees would not be fired or harmed in their jobs, if they helped support the political candidates supported by A.C. Cuellar.

20.     While early on Trevino at times had attempted to placate Cuellar and his regime in order to keep his job, Trevino had always planned to support his preferred slate for Edcouch-Elsa ISD elections in November 2013, among other candidates of his own choice.  Trevino supported

the "Team Unity" slate, but Defendants supported "Edcouch First." Defendants ultimately terminated Trevino because he was helping Eddy Gonzalez and Danny Guzman of Team Unity, among other candidates other than the candidates supported by Defendants.

21. Plaintiff Trevino was singled out for harassment and retaliation because he supported candidates of his choice rather than candidates preferred by Cuellar. On one occasion, Defendant Oscar Garcia forced Trevino to leave work to purchase a different type of boots or he would be fired, whereas two other employees were allowed to simply bring the correct footwear the next day.

22. On October 17, 2013, Trevino requested a leave from October 21 – November 2, 2013. He was directed by a county employee that it would have to be leave without pay, and that he must make his request directly to A.C. Cuellar in writing, which Trevino did on October 18, 2013. Trevino's request for leave without pay was denied by letter dated October 18, 2013.

23. By letter dated October 23, 2013 which was delivered to Plaintiff later, Trevino learned that Precinct One considered his employment terminated effective October 23. The letter stated that Trevino had "automatic[ally] resign[ed]" by his "failure to report to work as scheduled." In actuality, Trevino was targeted for termination because of his political activities that ran contrary to the whims of Defendants.

24. Plaintiff was well known to be a supporter of Gonzalez and Guzman, and other political candidates opposed by Defendants, and Defendants did not appreciate that fact. Defendants repeatedly communicated to Trevino that he needed to switch teams, that A.C. Cuellar wanted him to be on their team, and if he worked with their political team, his job at Precinct One would be safe and free of harassment.

25. Plaintiff does not like people trying to dictate to him how he should vote or participate in politics. Therefore, despite warnings from his government employers and superiors, he continued to publicly support the candidates of his choice for Edcouch Elsa school board and other public offices.

26. Defendants' claim that Trevino abandoned his job is pretextual; in actuality, Defendants terminated Plaintiff on account of his political activities. Trevino never would have abandoned his job, especially considering that he had seven children, all under the age of twelve at the time in question, that Trevino was in treatment for stage II breast cancer, and that he needed to maintain his insurance policy for his family and his own medical care.

27. Defendants' actions, severally and jointly, violated Plaintiff's civil rights guaranteed under the laws of the United States of America and Texas, and Plaintiff thereby sues for relief and to regain the reputation and dignity harmed by the Defendants' illegal actions.

## COUNT 1
### 42 U.S.C. § 1983: First Amendment freedom of speech and association

28. Plaintiff re-alleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

29. The Defendants and employees, agents and all those acting in concert with them or at their discretion acting under the color of law of Texas acted with deliberate indifference and subjected Plaintiff Trevino to the deprivation of the following rights, privileges and immunities secured by the laws and the Constitution of the United States when they decided to discriminate, retaliate, harass, and terminate the Plaintiff and deny him the opportunity to access a meaningful job and other benefits free from hostility and politics for which he was qualified and experienced:

30. The Defendants in their official capacities, and employees, agents and all those acting in concert with them or at their discretion deprived Plaintiff of his right of free speech under

the First and Fourteenth Amendments to the U.S. Constitution by basing the decision to terminate the Plaintiff to an impermissible extent on Plaintiff's exercise of free speech on matters of public concern. Such retaliatory actions by Defendants were a customary practice and further enforced by policy makers in an arbitrary, capricious, unreasonable, unlawful, unconstitutional and discriminatory manner.

31. The Defendants and employees, agents and all those acting in concert with them or at their discretion deprived Plaintiff of his right of free speech under the First and Fourteenth Amendments to the U.S. Constitution by basing the decision to take adverse employment actions against Plaintiff to an impermissible extent on Plaintiff's exercise of free speech due to his political preferences for candidates opposed to candidates supported by Defendants.

32. These retaliatory actions by Defendants impermissibly infringe upon Plaintiff's right of political association with groups and candidates of his choice.

33. Such retaliatory actions by Defendants were a customary practice and further enforced by policy makers in an arbitrary, capricious, unreasonable, unlawful, unconstitutional and discriminatory manner.

34. Such actions further evidence Defendants' failure to abide by their own substantive and procedural requirements as stated in their policies and rules. Such actions by Defendants were performed in an arbitrary, capricious, unreasonable, unlawful, unconstitutional and discriminatory manner.

35. Defendants' actions caused Plaintiff to incur pecuniary damages as well as other foreseeable compensatory damages. Plaintiff has been subjected to retaliation, harassment, termination, denial of employment, and other adverse actions causing Plaintiff damages. These

damages include lost wages in the past and the future, mental and emotional damages due to mental anguish, humiliation, embarrassment, and other emotional harm and distress.

## Count 2

### 42 U.S.C. 1985(3)

36. Plaintiff realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

37. Plaintiff asserts a cause of action against Defendants, in their individual and official capacities, for conspiracy to violate his civil rights. Defendants conspired to illegally commit such acts that caused injury to Plaintiff. Said actions were an attempt by Defendants to accomplish the deprivation of Plaintiff's civil rights of freedom of speech, association. Defendants were aware of their wrongful acts and benefited or intended to benefit by such actions.

### Injunctive and Declaratory Relief

38. Plaintiffs are entitled to injunctive, equitable, and declaratory relief, as well as appropriate damages.

39. Plaintiff prays that the Court enter an order with appropriate injunctive relief requiring defendants to reinstate Plaintiff to his former position of employment, with all benefits and emoluments of his position as he would have received if Defendants' retaliation had not occurred, and further injunctive relief prohibiting any future acts of retaliation or harassment and making plaintiff whole, as if Defendants' illegal acts of termination had not occurred.

40. As a proximate result of Defendants' illegal actions, Plaintiff has suffered damages. Plaintiff has suffered and will continue to suffer loss of wages and/or earning capacity. Plaintiff has also suffered mental anguish in the past and will continue to suffer such in the future.

41. The acts of Defendants set forth in this complaint were committed with malice or reckless indifference to the protected rights of Plaintiff. In order to punish Defendants for engaging in unlawful retaliation in violation of rights protected under the United States Constitution and to deter defendants from taking such actions in the future, Defendants are liable to Plaintiffs for exemplary damages.

42. Plaintiffs are also entitled to the maximum amount of pre and post-judgment interest as permitted by law.

43. As a result of Defendants' illegal actions, Plaintiff has been forced to retain legal counsel. Plaintiff is entitled to recover all reasonable and necessary attorneys' fees and expenses incurred in preparing and maintaining this action.

## Jury Trial

44. Plaintiff hereby requests and demands a jury trial.

## Prayer

Plaintiff prays that the Defendants be cited and/or appear herein, and that upon final judgment, Plaintiff be accorded damages as sough herein, including nominal, compensatory and punitive damages, reasonable and necessary attorneys' fees and expenses and court costs pursuant to 42 U.S.C. 1988 or any other applicable authority, pre-judgment and post-judgment interest, appropriate declaratory and/or injunctive relief, including reinstatement, back and front pay, a prohibition on further acts of retaliation, and for such other and further relief, both general and special, at law or in equity, to which Plaintiff shows himself to be justly entitled.

Respectfully submitted,

____/s/ Jerad Najvar_____
Jerad Wayne Najvar
Texas Bar No. 24068079
NAJVAR LAW FIRM
4151 Southwest Freeway, Suite 625
Houston, TX 77027
281.404.4696 phone
281.582.4138 fax
jerad@najvarlaw.com
*Counsel for Plaintiff*

Original Complaint                    10